1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BULENT ERTUR,

                    Plaintiff,

          v.

CAROL L. EDWARD, et al.,

                    Defendants.

CASE NO.  C05-1532JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment and request to strike expert report of Ahmet Chabuk (Dkt. # 37).  Neither party requests oral argument, and the court finds this motion suitable for disposition based on the parties' briefing and accompanying declarations.  For the reasons stated below, the court GRANTS Defendants' motion for summary judgment and grants their request to strike the expert report of Ahmet Chabuk.

ORDER- 1

## II.  BACKGROUND

This is a legal malpractice case.  Plaintiff Bulent Ertur is a German citizen who resided in the United States until his deportation in June 2005.  Defendant Carol Edward[1] is an experienced immigration attorney and one of four attorneys that assisted Mr. Ertur during various stages of his petition for permanent residency.[2]

Prior to Ms. Edward's representation of him, Mr. Ertur had applied to adjust his immigration status based on his marriage to a United States citizen, Pam Farrel.  In November 2001, Mr. Ertur's application was denied, based primarily on Ms. Farrel's decision to withdraw her support for his application.  According to Mr. Ertur, after sponsoring Mr. Ertur's application for an immigration visa,  Ms. Farrel "turned against him" by filing a petition in King County Superior Court for an order of invalidity of their marriage.  Resp. at 7.  In this proceeding, Ms. Farrel accused Mr. Ertur of committing "marriage fraud" for "green card purposes," and filed for a temporary restraining order against Mr. Ertur.  Id.  According to Mr. Ertur, Ms. Farrel also "wrote many letters to the [Immigration and Naturalization Service ("INS")] and made many false accusations against Ertur claiming that Ertur was a violent man, a criminal man, and that he had threatened her."  Id.  Ms. Farrel also filed documents with the INS showing that Mr. Ertur's first wife had accused him of assault and that his niece had accused him of "threats," both of which resulted in orders of protection against Mr. Ertur.  Id.

---

[1]Mr. Ertur also named Ms. Edward's husband, Jesse Berger, and her professional services corporation, Carol L. Edward, P.S.  The court's order applies equally to the claims against Mr. Berger and Ms. Edward's corporation.

[2]The parties do not dispute the majority of facts relating to Mr. Ertur's unsuccessful application for permanent residency.

ORDER- 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

After his visa application was denied, an immigration judge in Seattle entered an order of removal against Mr. Ertur.  The removal order gave Mr. Ertur 60 days to voluntarily depart the United States.  Mr. Ertur had until December 17, 2001, to appeal the removal order.  His attorney at the time, William Frick, filed an appeal on December 18, 2001, a day too late.  On February 5, 2002, the appeal was denied as untimely by the Board of Immigration Appeals, effectively finalizing the order of removal against Mr. Ertur.  It appears from the record that, had Mr. Frick filed a timely appeal, the removal order for Mr. Ertur would have been stayed pending the appeal.  Although Mr. Ertur had other direct appeal remedies, but none provided for a stay of his deportation.

The Department of Homeland Security thereafter issued a warrant of removal against Mr. Ertur that required him to appear for removal on March 19, 2002.  Mr. Ertur did not appear and was arrested and taken into custody on April 5, 2002.  Mr. Frick then filed for a writ of habeas corpus with this court, which stayed the order of removal against Mr. Ertur, but required that he remain in custody.  Mr. Ertur also filed a Washington State Bar Association complaint against Mr. Frick for missing the appeal deadline.  Mr. Frick withdrew from representing Mr. Ertur in his habeas petition.

In April 2002, Mr. Ertur retained his second immigration attorney, Bart Stroupe, to assist with his habeas petition.  Resp. at 10.  According to Mr. Ertur, Mr. Stroupe completed an investigation into Mr. Ertur's immigration status, and advised Mr. Ertur that he was not eligible to stay in the United States and that he should agree to a voluntary departure.  Id.  Mr. Ertur claims that Mr. Stroupe never advised Mr. Ertur of his eligibility for relief under the Violence Against Women Act ("VAWA").  Id. at 11.  According to Mr. Ertur, as a victim of domestic violence, he was eligible to remain in the United States under VAWA.  Mr. Ertur then terminated Mr. Stroupe's representation of him.

ORDER- 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On May 7, 2002, Mr. Ertur hired his third immigration attorney, Defendant Carol Edward, to assist him in prosecuting his petition for habeas corpus relief.  Ms. Edward filed a notice of appearance in Mr. Ertur's habeas case on May 17, 2002.  See Ertur v. Immigration and Naturalization Service, et al., C02-0747TSZ (W.D. Wash. April 5, 2002) (Dkt. # 17).  She also filed a reply brief in support of Mr. Ertur's petition on June 6, 2002, in which she argued that Mr. Ertur's petition should be granted due to Mr. Frick's ineffective assistance of counsel in the underlying immigration proceeding.  Id. (Dkt. # 22).  The basis of Ms. Edward's argument was that Mr. Frick missed the appeal deadline by one day causing Mr. Ertur's detention and possible deportation.  The court struck the reply brief, however, because Ms. Edward raised a new issue in the reply that should have been raised in an amended habeas petition.

Within two months of undertaking to represent Mr. Ertur, Ms. Edward moved to withdraw as his counsel because Mr. Ertur desired to be represented once again by Mr. Frick.  Ms. Edward also explained in her motion to withdraw that the attorney-client relationship had so deteriorated that she was no longer able to assist Mr. Ertur in his petition.  Id. (Dkt. # 27).  Ms. Edward states that she made her decision to withdraw because Mr. Ertur failed to inform her that he had a number of protective orders filed against him and that he was facing criminal charges in Seattle Municipal Court for violating Ms. Farrel's protective order.[3]  Edward Decl. ¶¶ 11, 12.  Ms. Edward only learned of these charges after she filed a motion to release Mr. Ertur on bond pending the outcome of his habeas petition, and the government responded with the claim that Mr.

---

[3]On June 13, 2002, Mr. Ertur was acquitted of all charges relating to Ms. Farrel's claim that he had violated the protective order.

ORDER- 4

Ertur was a risk to public safety.  Ms. Edward also requested to withdraw because Mr.

Ertur was not paying for her services, per their agreement.  Id.

The court denied Ms. Edward's motion to withdraw.  The court expressed concern

that the motion to withdraw identified Mr. Frick as new counsel, the very counsel that

Mr. Ertur claimed to be ineffective in his reply brief.  Accordingly, Ms. Edward

continued to represent Mr. Ertur.  On August 27, 2002, Ms. Edward filed a second

motion to withdraw, together with an amended habeas petition.  In the amended petition,

Ms. Edward again raised the claim of ineffective assistance of counsel.  Id. (Dkt. ## 35,

36).  On September 9, 2002, the court granted Ms. Edward's motion to withdraw because

Mr. Ertur exercised his right to represent himself.  Id. (Dkt. # 44).

Since that time, however, Mr. Ertur has been represented by his divorce attorney,

Ahmet Chabuk, in prosecuting his habeas petition.  Mr. Ertur, through Mr. Chabuk,

brought the instant action against Ms. Edward claiming that she was negligent during her

four-month representation of Mr. Ertur because she failed to seek relief for Mr. Ertur as

an abused spouse under VAWA.

## III. DISCUSSION

In examining Ms. Edward's summary judgment motion, the court must draw all

inferences from the evidence in the light most favorable to the non-moving party.  Addisu

v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is proper

where there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial

burden to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, the opposing

party must show that there is a genuine issue of fact.  Matsushita Elect. Indus. Co. v.

ORDER- 5

1   <u>Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  The opposing party must present

2   significant and probative evidence to support its claim or defense.  <u>Intel Corp. v. Hartford</u>

3   <u>Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991).  For purely legal questions,

4   summary judgment is appropriate without deference to the non-moving party.

5

6        In order to prevail at trial on his malpractice claim, Mr. Ertur would have to prove

7   four elements by a preponderance of evidence:

8          (1) The existence of an attorney-client relationship which gives rise to a
       duty of care on the part of the attorney to the client; (2) an act or omission

9          by the attorney in breach of the duty of care; (3) damage to the client; and

10         (4) proximate causation between the attorney's breach of the duty and the
       damage incurred.

11

12  <u>Hizey v. Carpenter</u>, 830 P.2d 646, 651 (Wash. 1992).  Mr. Ertur's malpractice claim is

13  based on his allegation that Ms. Edward failed to raise, or even suggest the possibility of,

14  bringing a claim for relief under VAWA.  One provision of VAWA, 8 U.S.C.

15  § 1186a(c)(4)(c), permits an alien who was "battered by or was the subject of extreme

16  cruelty perpetrated by his or her spouse" to obtain exceptions from the laws governing

17  adjustment of immigration status.  Mr. Ertur claims that he could have raised a VAWA

18  claim in the one-year period following the court's February 5, 2002 dismissal of his

19  appeal of the removal order.  Thus, according to Mr. Ertur, he had the opportunity to

20  raise a VAWA claim anytime between February 5, 2002 and February 5, 2003.

21

22       Mr. Ertur's malpractice claim relies entirely on his assertion that he informed Ms.

23  Edward of the abuse he suffered at the hands of Ms. Farrel and that Ms. Edward failed to

24  raise VAWA as a basis for remaining in the United States.  His evidence in support of

25  this allegation, which is contained in his response brief, is that Ms. Edward "was told of

26  the abuse Ertur had endured by his wife," and that she was aware of Ms. Farrel's filing of

27  fraudulent documents with the INS in an attempt to have him deported.  Resp. at 12-13.

28

ORDER- 6

Mr. Ertur does not identify "who" told Ms. Edward of the abuse, only that she "was told." Ms. Edward claims, however, that at no time did Mr. Ertur inform her that he was physically abused or suffered abusive behavior by Ms. Farrel, nor did he inform her of any facts that would lead to this conclusion. Edward Decl. ¶ 16. In her judgment, Ms. Edward did not find an application under VAWA to be appropriate because it did not appear that Mr. Ertur had suffered abuse by his former wife. Id. Ms. Edward also provides evidence that she has experience bringing VAWA claims on behalf of both male and female immigration clients. Id. at ¶ 1. In the end, Ms. Edward determined that Mr. Ertur had provided no evidence to support a claim that he had been "battered by" or the "subject of extreme cruelty perpetrated by" his spouse. Id. at ¶¶ 15-16. She also believed a claim under VAWA was not likely to succeed because other women, including Ms. Farrel, had obtained restraining orders against Mr. Ertur. Id. The court finds this evidence sufficient to require Mr. Ertur to demonstrate the existence of a genuine issue of material fact regarding Ms. Edward's alleged breach of her duty of care to Mr. Ertur.

Mr. Ertur offers his evidence by way of an expert opinion report filed by his attorney, Mr. Chabuk. In this report, Mr. Chabuk claims that he has "lots of evidence to indicate that Ertur was [a VAWA] victim." Mr. Chabuk does not, however, share any of that evidence with the court. Mr. Chabuk also claims in his own expert opinion report that in late 2002, he told Ms. Edward that "he had significant amount of evidence to demonstrate that Ertur was a victim of domestic abuse," but that Ms. Edward did not "show any interest in the evidence." Chabuk Report at 9; Resp. at 12. Putting aside for the moment the problem of an attorney filing an expert report in his own case, the court finds nothing in the record to support Mr. Chabuk's claim to "significant amount[s] of

ORDER- 7

1  evidence." Accordingly, the court finds Mr. Ertur's evidence on this issue to be both

2  inadmissible and unpersuasive.

3       Continuing the theme of offering inadmissible evidence to defeat summary

4  judgment, Mr. Ertur also claims that a representative from the Northwest Immigration

5  Right Project told him that in her "professional legal opinion . . . Ertur should be eligible

6  for relief under [VAWA]" and that the representative's supervisor confirmed her

7  "professional opinion." Resp. at 12. There is no declaration from the representative or

8  her supervisor to support these assertions. The court does not consider unsupported

9  hearsay evidence in determining whether there is a genuine issue of material fact for trial.

10  See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 (9th Cir.

11  1989) (stating that facts relied on must be admissible under the rules governing admission

12  of evidence generally).

13

14       Even after four years Mr. Ertur still fails to come forth with any evidence that his

15  wife was abusive or violent toward him. Yet, Mr. Ertur expects a jury to find that based

16  on his vague allegations of mistreatment, Ms. Edward should have sought relief under

17  VAWA for Mr. Ertur. On the other hand, Ms. Edward provides sufficient admissible

18  evidence that she was not aware of the allegations of abuse and, even if she had been

19  aware of them, in her judgment a claim for relief under VAWA would not have been

20  appropriate, especially given Mr. Ertur's past history of alleged abuse against his former

21  wives and niece. Based on Mr. Ertur's failure to offer the court sufficient, admissible

22  evidence of Ms. Edward's alleged breach of her duty of care, summary judgment on his

23  claim of legal malpractice is appropriate.

24

25

26

27       Alternatively, the court finds summary judgment proper because Mr. Ertur fails to

28  show that Ms. Edward's four-month representation of him was the proximate cause of his

ORDER- 8

deportation.  To prove proximate cause, Mr. Ertur would have to prove that he would

have fared better but for Ms. Edward's negligence.  E.g., Daugert v. Pappas, 704 P.2d

600, 603 (Wash. 1985); Lavigne v. Chase, Haskell, Hayes & Kalamon, P.S., 50 P.3d 306,

309 (Wash. Ct. App. 2002); Aubin v. Barton, 98 P.3d 126, 134 (Wash. Ct. App. 2004).

The court finds that Mr. Ertur fails to come forth with sufficient evidence to show that he

would not have been deported had Ms. Edward advised him of possible relief under

VAWA.  The evidence before the court is that Mr. Ertur's self-submitted application for

provisional relief under VAWA was eventually granted.  Resp. at 15.  Although the

provisional relief was later revoked, there is no evidence before the court that even

suggests that the outcome of Mr. Ertur's application would have been any better had Ms.

Edward filed a VAWA petition in 2002.  Indeed, Mr. Ertur spends approximately two

pages of his response brief explaining how the attorney after Ms. Edward, Manual Rios,

failed to file the necessary documents in support of Mr. Ertur's VAWA petition.  Resp.

15-16.  The court therefore finds that Mr. Ertur has not provided sufficient evidence to

submit the issue of proximate cause to a jury.

Lastly, the court addresses Ms. Edward's request to strike the expert opinion

report of Ahmet Chabuk, Mr. Ertur's attorney in this case.  Although the request may be

considered moot given the court's ruling on summary judgment, the court nevertheless

addresses it in an effort to enlighten Mr. Chabuk on the standard of professional conduct

in this State and in this court.  As noted above, Mr. Chabuk filed an expert opinion report

in this case.  In the report, Mr. Chabuk opined that Ms. Edward " had a duty of care to

advise Ertur of his eligibility for relief under VAWA and she breached that duty."

Chabuk Opinion at 22.  Mr. Chabuk did not stop there but also opined that Ms. Edward's

breach was the proximate cause of Mr. Ertur's deportation.  Id.  It also appears from the

ORDER- 9

1

2   report that Mr. Chabuk charged Mr. Ertur "a reasonable amount" for drafting his "expert

3   report." Id. at 25.  The court is seriously troubled by Mr. Chabuk's blatant disregard for

4
    the Washington Rules of Professional Conduct ("RPC"), which clearly provide that "[a]
5
    lawyer shall not act as advocate at a trial in which the lawyer or another lawyer in the
6
7   same law firm is likely to be a necessary witness . . . ."  RPC 3.7.  Here, Mr. Chabuk

8   made the likelihood that he would be a necessary witness in his client's case a certainty.

9   This act not only created a glaring conflict of interest, but failed to serve the best interest

10  of his client, who may have benefitted from a third-party expert.  The court therefore

11
    STRIKES Mr. Chabuk's report and directs Mr. Chabuk not to charge Mr. Ertur for any
12
    fees associated with preparing the improper "expert opinion report."
13
14                              **IV.  CONCLUSION**

15          For the reasons stated above, the court GRANTS Defendants' motion for summary

16  judgment and request to strike the expert report of Ahmet Chabuk (Dkt. # 37).  The court

17  directs the clerk to enter judgment for Defendants in accordance with this order.

18
            Dated this 22nd day of March, 2007.
19

20

21                                          _____

22                                          JAMES L. ROBART
                                            United States District Judge
23

24

25

26

27

28

ORDER- 10